## Home Insurance Co. v. Westerfield.
(Decided Dec. 8, 1936.)

GORDON, LAURENT, OGDEN & GALPHIN and CLEMENTS & CLEMENTS for appellant.

CLAUDE E. SMITH and W. H. BARNES for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

This is a suit on a farm installment fire insurance policy issued by the Home Insurance Company of New York to Hondy Westerfield August 14, 1934. The policy was for a term of five years, and covered the insured's dwelling house, its contents, and a barn. The total premium was $68.10, and was payable as follows: $13.62 when the policy was delivered, and the balance in four equal installments on September 1 of each of the next succeeding four years. The insured made the first payment when the policy was delivered, and executed a note for the four annual installments. The first installment of the premium note due September 1, 1935, was not paid when due, and had not been paid September 10, 1935, when the dwelling house and its contents, which were insured for $750, were entirely destroyed by fire.

The policy contained a provision suspending the insurance during the time the payment of an installment of the premium was in default. This provision reads:

> "But it is expressly agreed that this Company shall not be liable for any loss or damage that may occur to the property herein mentioned while any promissory note or obligation, or part thereof, given for the premium remains past due and unpaid. Payments of notes and installments thereof must be made to the said Home Insurance Company, at its Farm Department office in Chicago, Illinois, or to an authorized person having possession of such note for collection, and a receipt from the Farm Department office of this Company in Chicago, Illinois, must be received by the assured before there can be a revival of the policy, such revival to begin from the time of said payment only, and in no event to extend this policy beyond the original date of expiration."

The installment note and the application signed by the insured each contained a similar provision. These provisions were pleaded as a defense by the insurance company in its answer. The plaintiff, in a reply, alleged that, between the date when the installment was due and the day of the fire, the insurance company had made an unconditional demand for payment of the past-due installment, and had thereby waived this defense. In a rejoinder, the insurance company denied that it had made an unconditional demand for the payment of the installment due on the premium note September 1, 1935, or treated the policy as being in full force or effect until it was notified of the destruction of the plaintiff's property. On the trial, the defendant moved for a directed verdict in its favor at the conclusion of the plaintiff's evidence, and again at the conclusion of all of the evidence, but each motion was overruled and the case was submitted to the jury, which returned a verdict in favor of the plaintiff for the sum of $750.

A provision in a policy that no liability shall occur while an installment of the premium is past due and unpaid is valid and binding on the insured, and, if a loss occurs during the default and while the policy is in suspense, and no waiver or estoppel appears, the company is not liable. Lindsey v. Home Insurance Co., 244 Ky.

580, 51 S. W. (2d) 924; Boggess v. Insurance Company of North America, 235 Ky. 529, 31 S. W. (2d) 899; Fidelity-Phenix Fire Insurance Co. v. Flora, 235 Ky. 439, 31 S. W. (2d) 699; Hartford Fire Insurance Co. v. Johnson, 217 Ky. 826, 290 S. W. 673; Continental Insurance Company v. Stratton, 185 Ky. 523, 215 S. W. 416, 8 A. L. R. 391, and annotation at page 395. Appellee concedes this to be the rule, but argues that appellant, after the premium installment was due and before the loss, made an unconditional demand for payment of the past-due installment and thereby waived the suspension provisions of the policy. His contention is based upon an alleged letter purportedly written to him by the company after September 1, 1935, and before the loss, and which, at the time of the trial, he claimed had been lost. He testified that at about 11 o'clock a. m. September 10, 1935, he received a letter written on stationery of the Home Insurance Company which said: "Your insurance premium or note due September 1, has not been received. Please remit without delay." The letter was signed by either H. T. Gardner or F. H. Cornell. Gardner was the local agent at Owensboro, and Cornell was the manager of the Farm Department of the Home Insurance Company at Chicago, Ill. Gardner and Cornell each denied that he had written such a letter, and the affidavit of Frank J. Harwas, an employee of the company in its Chicago office in charge of the premium collection division of its Farm Department, was read as his deposition. He stated that no such letter was written to appellee and that the only notice sent to him was the regular formal notice of the approaching maturity of a premium installment, which was mailed August 15, 1935. This notice was printed, and read:

"Your second installment of premium for insurance in the Home Insurance Company, New York, under policies named above will be due on the 1st day of September, 1935. Please remit to this, Chicago, Office, without delay, the amount called for, returning this whole sheet in the enclosed addressed envelope. A copy of the important conditions of your policy referring to payment of premium will be found on the back of this notice."

At the bottom of the notice appeared the printed signature, "F. H. Cornell, Manager," and the provision of the policy heretofore quoted was printed on the back.

The figures, $13.62, the amount of the premium due September 1, 1935, were typewritten on the face of the notice. Appellee admitted that he received that notice and also a letter written by H. T. Gardner, the local agent, dated September 10, 1935, which reads in part:

"We have been notified by the Home Insurance Company of New York, that an installment of premium amounting to $13.62 due September 1, 1935, under the above captioned policy has not been paid.

"As a personal favor to you we urge you to promptly remit the amount of the installment to the company at Chicago, Illinois, or to this office. Failure to pay an installment when due suspends the policy and relieves the company of liability for damages while an installment is past due and unpaid."

It appears that after September 1, 1935, the company sent to H. T. Gardner, its agent at Owensboro, a list of names of its delinquent policyholders in that territory, and appellee's name was on that list. Appellant insists that the alleged letter, if written, did not contain an unconditional demand for payment of the past-due installment of the premium, and therefore did not constitute a waiver of the condition contained in the policy and the note. The contents of the letter, as narrated by appellee in his testimony, were merely a notice that the installment due September 1 had not been received and a request to remit without delay. Nothing was said concerning the suspension of the company's liability during such time as the premium was unpaid. A less imperative notice was held to be an unconditional demand for payment in Clifton v. Hartford Fire Insurance Company, 203 Ky. 779, 263 S. W. 338. To the same effect are Walls v. Home Insurance Company, 114 Ky. 611, 71 S. W. 650, 24 Ky. Law Rep. 1452, 102 Am. St. Rep. 298, and Home Insurance Company v. Smither, 199 Ky. 344, 251 S. W. 169.

Appellant next insists that the evidence is insufficient to show that the alleged letter was written. Appellee testified that he received the letter about two hours before his property was destroyed by fire, and that a week or two after the fire he took the letter, with other papers pertaining to his insurance, to Mr. Miller Holland, an attorney at Owensboro, Ky. He never saw

the letter again, though, at the trial, he had in his possession the other papers which he had taken to Mr. Holland's office. He stated that the last time he saw the letter it was in Mr. Holland's possession. Mr. Holland was not introduced as a witness.

Before evidence as to the existence and the contents of a lost letter can be introduced, it must be satisfactorily shown that the letter has been lost without the fault of the party desiring to prove its contents. Chilton's Adm'r v. Shelley, 243 Ky. 576, 49 S. W. (2d) 305; Mutual Life Insurance Co. v. Louisville Trust Co., 207 Ky. 654, 269 S. W. 1014. In Nutall's Adm'r v. Brannin's Ex'rs, 5 Bush, 11, evidence of the contents of a lost letter was offered and one of the questions considered was the character and quantum of proof necessary to authorize the admission of secondary evidence. The court said:

"The proof of the loss of the letter addressed by Nutall to Brannin was insufficient to admit secondary evidence of its contents. Brannin proved that he had delivered the letter to one of his attorneys, who had it the last time he saw it; that the attorney said he could not find it, and that it was lost. It is not suggested that said attorney was not living, and he was not called as a witness. The paper was traced to his hands; but he was not called on, to show what had become of it. The paper, therefore, had not been sufficiently accounted for to admit the evidence."

In the instant case, the plaintiff's cause of action rested wholly upon the alleged lost letter, and it was incumbent upon him to make out its loss satisfactorily and show that he had exercised reasonable diligence to obtain the original. Under the circumstances, Mr. Holland, the last custodian of the letter, should have been introduced as a witness, or his absence should have been satisfactorily explained. 22 C. J. p. 1046, sec. 1344. The proof of the loss of the letter was not sufficient to authorize the admission of secondary evidence as to its contents, and it follows that the trial court erred in submitting the case to the jury. We express no opinion of the sufficiency of the evidence as to the contents of the letter, if its loss had been satisfactorily established.

The judgment is reversed, for further proceedings consistent herewith.