## Sea et al. v. Continental Ins. Co. of City of New York.

Nov. 15, 1940.

Charles C. Marshall, Judge.

Ollie J. Bowen and Ernest N. Fulton for appellants.

Gordon, Laurent, Ogden & Galphin, T. M. Galphin, Jr., and J. W. Gaines for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Affirming.

On February 7, 1930, the Continental Insurance Company issued a policy of fire insurance to John A. Sea covering certain property for a term of five years in consideration of a total premium amounting to $509.75, one-fifth of which was paid at that time, and for the balance he executed a note which was to be paid in four installments of $101.95 on the first day of each succeeding March. Included in the property insured was a dwelling house upon which the Lawrenceburg National Bank held a mortgage and the policy contained a clause that in case of loss the policy would be paid to the Bank as its interest appeared. It was stipulated in the policy, also in the installment premium note, that while any premium installment remained due and unpaid the policy lapsed and the Company was not liable for any loss during the time the payment of a premium was in arrears. The policy further provided that proof of loss must be furnished the Company by the insured within sixty days after date of loss; that any suit brought to recover on the policy must be commenced within twelve months after the date of loss.

Sea's dwelling house was destroyed by fire on July 6, 1933, and he and the Bank filed this action on February 17, 1937, to recover $1,750 on the policy. The Company's answer as amended pleaded that the installment of the premium note due March 1, 1933, was unpaid at the time of the fire; that the insured failed to furnish it with proof of loss within sixty days from the date of the fire; that the action was not instituted as provided by the policy within twelve months from the date of the loss, therefore, it was barred. Issues were joined by appropriate pleadings, and upon the trial at the conclusion of all the evidence the court peremptorily instructed the jury to find for the defendant.

Appellants insist the judgment dismissing their

petition should be reversed because: (1) The evidence relative to the payment of the premium was sufficient to take the case to the jury; (2) there was evidence to the effect that the Company denied liability, thereby waiving proof of loss; (3) the defense that the action was not instituted within twelve months after the fire should not apply as the policy contract sued on was entered into before the decision of Burlew v. Fidelity & Casualty Co., 276 Ky. 132, 122 S. W. (2d) 990, 121 A. L. R. 751, wherein this court upheld the right of parties to curtail by contract the statute of limitations.

Since we have reached the conclusion that the evidence clearly shows the premium installment due March 1, 1933, was in arrears at the time of the fire and that the Company had not waived the payment thereof, this caused the policy to be lapsed, or in suspension, at the time of the fire, hence it will not be necessary to consider the second and third errors assigned.

We have often written that a provision in a policy which suspends it while the premium is unpaid is valid; and if a loss occurs while a premium is in arrears, the Company is not liable where no waiver or estoppel appears. Home Ins. Co. v. Westerfield, 266 Ky. 494, 99 S. W. (2d) 464; Hartford Fire Ins. Co. v. Webb, 281 Ky. 276, 135 S. W. (2d) 883. The correctness of this rule is not denied by appellants, but they contend that the Company's local agent agreed with the president of the Bank that he would later bill it for the premium and same would be paid by the Bank upon receipt of this bill. Mr. Sherwood, the president of the Bank, testified that such was the agreement between him and Mr. Moxley of the Armstrong Agency, which was the local agent of the Company. However, the record shows that on March 24, 1933, the Company wrote the Bank calling to its attention that the premium due March 1, 1933, was unpaid and that it was not liable in case of loss during the period the premium was in default. The last two paragraphs of that letter read:

"Your attention is called to the fact that our agent has no power or authority to waive or change the conditions of our policy contract concerning the effect of the failure to pay the premium notes.

"We trust therefore, that you will use your best efforts to have the insurance reinstated in ac-

cordance with the terms and conditions of the policy contract.''

Upon receipt of that letter Mr. Sherwood wrote the Armstrong Agency requesting the elimination of certain personal property from the policy because the Bank had no lien thereon and wanted the premium reduced, but if this could not be done, the Bank would pay the entire premium, as it did not want the policy to lapse. On March 28, Mr. Moxley answered Mr. Sherwood's letter stating that he had written the Company asking it to protect the Bank so far as the policy covered the buildings, advising the Bank would pay the premium. In reply to Moxley's letter the Company wrote direct to the Bank:

"April 5, 1933.

"Lawrenceburg National Bank
    "Lawrenceburg, Ky.
        "Re. Policies No. 716170/1 J. A.
            Sea, Sinai, Ky.

"Gentlemen:

"In accordance with request of the Armstrong Agency, we are holding your interests protected so far as the buildings are concerned under this policy until April 15th. We hope this will give you sufficient time in remitting $91.10 to cover the premiums on the buildings.

"Yours very truly,

"R. L. Chobotsky
"Manager Collection Department."

While this letter states the Company would protect the Bank's interest until April 15, without giving the year, yet it was dated April 5, 1933, and no person of ordinary intelligence could have failed to understand it meant the Bank was protected until April 15, 1933. Indeed, the Bank does not contend it construed this letter as meaning the Company would protect it beyond that date, but appears to rely upon the fact that it had paid the premium due March 1, 1932, and that Moxley had agreed that the policy would not be canceled and that he would bill it for the premium due March 1, 1933, which the Bank had agreed to pay upon receipt of such bill.

Appellants argue that this policy was canceled in the face of Moxley's agreement that it would not be can-

celed and that the premium could be paid when he rendered the Bank a bill therefor. However, the policy was never canceled, but by its terms it was suspended during the time the premium was in default. Although the Bank was expressly notified in writing that the Company's agent had no authority to change the policy contract concerning the failure to pay the premium, it argues it can rely upon the agreement made with the agent, citing Home Ins. Co. v. Ballew, 96 S. W. 878, 29 Ky. Law Rep. 1059. With this we cannot agree. In the Ballew case it was pointed out that insurance companies by their agents can waive the forfeiture of the policy, but in the instant case the policy provided the agent has no such authority, which fact the Company expressly called to the Bank's attention in its letter of March 24th. Such a provision was likely inserted in the policy to circumvent court decisions that agents of insurance companies can waive forfeitures of policies for failure to pay premiums.

The correspondence above quoted plainly shows the Company notified the Bank that the premium was in arrears; that its local agent had no authority to waive the conditions of the policy concerning the payment of the premium; and that it would protect the Bank until April 15, 1933. When the Bank disregarded such written notice from the Company and relied upon the agreement Mr. Sherwood, its president, testified he had with Mr. Moxley, that the policy would not be canceled, and that Moxley would bill the Bank for the premium and that it would pay same upon receipt of the bill, it did so at its peril. The Bank cannot now be heard to say that the Company waived the collection of the premium beyond April 15, 1933, or that it is estopped by the agreement its agent is alleged to have made with the Bank for the payment of the premium.

The judgment is affirmed.